**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | 1:07-cr-147 |
| | : | 1:13-cv-1532 |
| v. | : | |
| | : | Hon. John E. Jones III |
| NELSON LUIS DIAZ, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

**June 18, 2015**

Before the Court is Defendant's Amended Motion to Vacate, Set Aside, or

Correct Sentence Pursuant to 28 U.S.C. § 2255.  (Doc. 205).  Defendant's motion

challenges that trial counsel rendered ineffective assistance during plea

negotiations, causing him to reject various plea offers and proceed to trial.  For the

reasons that follow, the Court will deny the Motion.

## I.    BACKGROUND

This action possesses a lengthy procedural history, which we have amply

inventoried in a previous memorandum (Doc. 204), and which we reproduce here:

### A.    Charges, conviction, and sentencing

On April 4, 2007, a two-count Indictment was
filed against Defendant, charging him with possession of
a firearm in furtherance of drug trafficking, in violation
of 18 U.S.C. § 924(c) (Count I), and possession with
intent to distribute heroin, in violation of 21 U.S.C. §
841(a)(1) (Count II).  (Doc. 1).  The firearms charge

related to an incident occurring March 29, 2006.

Defendant entered a plea of not guilty to the charges, and an attorney from the Federal Public Defender's Office[, Lori Ulrich,] was appointed to represent him.

On June 22, 2007, Defendant filed a motion to suppress statements derived from a law enforcement interrogation involving an unrelated investigation.  (Doc. 21).  We held a hearing and, later, issued an order denying the motion.  (Doc. 30).

The Government filed a Superseding Indictment against Defendant on September 2, 2007.  (Doc. 36). Counts I and II remained the same, however, an additional firearms charge was added at Count III. Similar to Count I, that charge asserted that in or about January 2006 and before March 29, 2006, Defendant possessed a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c).

The matter proceeded to trial on January 7, 2008. On January 10, 2008, the jury returned a verdict convicting Defendant on all counts.

On September 23, 2008, we sentenced Defendant to a term of imprisonment of 480 months as follows: 120 months on Count I, 240 months on Count II, and 120 months on Count III, all to be served consecutively.

## B.    Direct appeals

Defendant promptly filed an appeal, and the Third Circuit vacated one of the two § 924(c) violations and remanded the case for re-sentencing.  We re-sentenced Defendant on July 22, 2010, imposing a sentence of 400 months imprisonment, which consisted of 160 months on Count I and 240 months on Count II to run consecutively.

Defendant appealed from this sentence as well, and once again, the Third Circuit vacated the judgment

2

of sentence and remanded the case, this time in light of
intervening case law.  We sentenced Defendant for the
third and final time on August 10, 2011, prescribing a
term of imprisonment of 397 months.  We sentenced
Defendant to consecutive sentences of 157 months on
Count I and 240 months on Count II.

Another appeal was filed by Defendant.  The Third
Circuit affirmed the judgment of sentence on July 6,
2012.  Defendant did not file a Petition for Writ of
Certiorari.

### C.     § 2255 Motion

On June 7, 2013, Defendant filed a timely, pro se
Motion to Vacate, Set Aside, or Correct Sentence
pursuant to 28 U.S.C. § 2255 and a supporting brief.
(Docs. 178, 179).  The Motion advanced a single claim
of ineffective assistance of counsel in violation of the
Sixth Amendment to the United States Constitution.
Namely, Defendant averred that trial counsel rendered
deficient advice during plea negotiations, causing him to
reject various plea offers and proceed to trial.  (Doc. 178,
p. 4).  In his supporting memorandum [and sworn
affidavit], Defendant recounted that the Government had
offered binding pleas of 21, 20, and finally 19 years, in
return for a guilty plea to Count II only.  (Doc. 179, pp.
7-8).  According to Defendant, trial counsel guaranteed
that Defendant could beat the firearms charges of Counts
I and III, and advised a rejection of the plea offers on
that basis.  (*Id.*).[1]

We issued an Order on June 19, 2013, advising

---

[1]  Specifically, Defendant averred that Ms. Ulrich advised him "undoubtedly I will beat
those charges," and with respect to the Government's plea offers, she apparently said "don't take
it.  I have an obligation to tell you, but don't take it."  (Doc. 179, pp. 7, 16).  Defendant stated
that he was willing to accept the plea, but Ms. Ulrich "**guaranteed** she'd **beat the charges** and
persuaded the [Defendant] to decline the Government's plea offer."  (*Id.* at p. 7 (emphasis in
original)).

Defendant of various limitations imposed upon § 2255 motions, including the prohibition on second or successive motions except in very limited circumstances. (Doc. 181). We permitted Defendant 30 days to determine whether he wished to withdraw the current motion or have the motion construed and ruled upon, instructing him to file an election form in either instance. We noted that failure to comply with our Order would result in the present motion being construed and ruled upon pursuant to 28 U.S.C. § 2255.

Defendant made no timely submission on the docket, thereby presumably signaling his intent to proceed on his motion as filed. Accordingly, on October 30, 2013, we issued an Order directing the Government to file opposition papers and permitting Defendant to file a reply within 30 days of the Government's filing. (Doc. 182).

The Government filed an opposition brief on November 26, 2013, centrally arguing that, even if Defendant could demonstrate that his attorney guaranteed success at trial, such representations are insufficient to establish ineffectiveness of counsel. (Doc. 183, pp. 5-6).

Defendant submitted two responsive memoranda on January 21, 2014, beyond the 30 day deadline. (Docs. 184, 185).

On June 20, 2014, Defendant filed a pro se Motion for Leave to Amend his § 2255 Motion (Doc. 186), seeking permission to add a challenge pursuant to *Alleyne v. United States*, 133 S. Ct. 2151, 2163 (2013) (holding that facts that increase mandatory minimum sentences must be submitted to the jury and found beyond a reasonable doubt). This motion was never briefed.

We issued an Order on August 19, 2014, appointing counsel for Defendant and directing defense counsel to file a status report within 30 days advising

4

whether an evidentiary hearing would be needed on the underlying § 2255 motion.  (Doc. 187).  On September 9, 2014, counsel filed a report, which requested an evidentiary hearing and expressed that additional time was required to investigate the trial transcripts and other relevant materials to determine whether an amended § 2255 motion should be filed.

On December 20, 2014, after being granted an extension, Defendant filed [a] counseled Motion for Leave to Supplement and/or Amend His Pro-Se 28 U.S.C. § 2255 Motion (Doc. 193) along with a supporting brief (Doc. 194).  Defendant [sought] to supplement his § 2255 motion by including additional grounds for his ineffective assistance of counsel claim, namely: (1) trial counsel did not adequately advise Defendant of his sentencing exposure, including failing to discuss the consequences of the mandatory consecutive sentences of the § 924(c) counts to the drug count; (2) at trial, counsel conceded Defendant's guilt on Count II; (3) such concession of guilt amounted to an involuntary guilty plea; (4) counsel failed to advise Defendant that, by conceding Count II, he was conceding an essential element of Counts I and III; (5) counsel rendered ineffective assistance by recommending to Defendant that he reject the plea agreement and proceed to trial; and (6) the cumulative prejudice of counsel's deficiencies amounted to ineffective assistance of counsel.  (Doc. 193, ¶ 31).

(Doc. 204, pp. 1-6) (footnote omitted).

On March 9, 2015, we issued a Memorandum and Order granting the

motion to amend insofar as Defendant sought to allege ineffective assistance of

counsel based on his attorney's failure to advise of his sentencing exposure and,

also, counsel's recommendation that he reject the plea agreements and proceed to trial.  (Doc. 204, pp. 8-9).  We found that the aforementioned allegations appropriately related back to his original motion.  (*Id.*).  However, Defendant's remaining claims did not exhibit requisite relation back to the plea negotiations challenged in the original motion, and thus, we denied the motion as to those assertions.  (*Id.* at pp. 9-10).

Defendant filed his Amended § 2255 motion on March 24, 2015.  (Doc. 205).  The instant Motion realleges all facts and arguments set forth in Defendant's pro se motions and memoranda.  It also centrally adds that trial counsel was ineffective for failing to advise Defendant of his true sentencing exposure, *e.g.*, that convictions on the firearms and drug charges would result in mandatory consecutive sentences.[2]

### D.    Hearing on § 2255 motion

We held a hearing on Defendant's motion on March 25, 2015, at which Attorney Lori Ulrich and Defendant testified.

Attorney Ulrich, a federal public defender for almost 22 years, represented

---

[2] Defendant also reasserts that his sentence is unconstitutional in light of *Alleyne*. However, he acknowledges that the Third Circuit's decision in *U.S. v. Winkleman*, 746 F.3d 134 (3d Cir. 2014), held that *Alleyne* cannot be applied retroactively to cases on collateral review. Thus, he advances the argument for purposes of issue preservation alone, in the event that the Supreme Court issues a contrary ruling.

Defendant at trial.  (Doc. 211, pp. 5-6, 27).  She stated that she met with Defendant five to ten times throughout the course of the representation.  (*Id.* at p. 7).  During her meetings with Defendant, she recounted that, among other things, she reviewed the evidence with Defendant, discussed the strengths and weaknesses of the Government's case, and forecasted Defendant's sentencing exposure if he entered a plea or proceeded to trial.  (*Id.* at pp. 8, 9, 18). Specifically, Ms. Ulrich testified to discussing Defendant's sentencing guideline range with him, referencing her notes from May 16, 2007.  (*Id.* at p. 9).  She stated that she recorded multiple calculations, *e.g.*, with and without a guilty plea (262 to 327 months, and 368 months to life, respectively), and with only the drug charge (210 to 262 months without a plea, and 151 to 188 months with a plea).  (*Id.* at pp. 9-10).

As to plea negotiations, Attorney Ulrich testified that there were no written plea agreements in the file, but that her notes indicate a conversation with the Government on April 23, 2007, offering a 20 year plea, which she recalled to be binding.  (*Id.* at pp. 10-11).  On cross examination, it was elicited that plea agreements with the United States are typically formal, written documents; addressed to multiple contingencies; and only perfected when signed by the parties, including the supervisor in the United States Attorney's Office.  (*Id.* at p.

28).  Ms. Ulrich explained that "I don't think there was ever a meeting of the

minds . . . and that's why a written agreement never materialized."  (*Id.* at p. 33).

With reference to her notes, she stated that she discussed the plea offer with

Defendant on November 19, 2007, explaining the definition of a binding plea, and

Defendant rejected the offer as he desired a 20 year cap.  (*Id.* at p. 12).  Attorney

Ulrich testified, essentially, that the Government would not consider a 20 year cap,

and conversely, Defendant would only be satisfied with a 20 year cap.  (*Id.* at p.

13).  She stated that she would have encouraged Defendant to accept the plea offer

and "definitely" would not have advised him to reject it.  (*Id.* at p. 20).  At some

point proximate to the start of trial, Ms. Ulrich testified, plea negotiations would

have been set aside, and the focus would have been on trial.  (*Id.* at p. 15).

Ms. Ulrich related that she and Defendant discussed trial throughout their

relationship, and she stated that "there's no doubt in [her] mind" that she would

have discussed sentencing exposure upon conviction.  (*Id.* at p. 14).  She stated

that she would have explained that § 924(c) requires a mandatory, consecutive

sentence, and she would have discussed the implication of mandatory minimum

sentences with Defendant.  (*Id.* at p. 14).  Ms. Ulrich confirmed that she

"absolutely" would have advised Defendant on the pros and cons of trial, mainly,

that Defendant would be conceding the drug trafficking count (based on

8

admissible statements he had made during a police interrogation admitting the same).  (*Id.* at p. 16).  She explicitly stated that "I would never promise anybody a victory at trial.  In fact, I always – in most instances I discourage trials, and I would have discouraged a trial in this case." (*Id.* at p. 18).  She also denied making the statement to Defendant that "undoubtedly I will beat those charges," emphasizing that "I would never have said that.  Never." (*Id.* at p. 31).  Ms. Ulrich acknowledged, however, that she does not have notes on, or an independent recollection of, her conversation with Defendant concerning the likelihood of success at trial.  (*Id.* at p. 19).  She testified that "I'm sure I would have said slim to none.  But it's not in my notes." (*Id.* at p. 20).[3]  She recalled believing that the evidence was strong against Defendant on the firearms charges, but that there were some weaknesses and inconsistencies in the Government's witness statements. (*Id.* at 19).  In general, Ms. Ulrich summarized that, because Defendant was largely disinterested in the prospect of pleading, the majority of their time was spent discussing and preparing for trial.  (*Id.* at p. 25).

Defendant also testified at the hearing.  He stated that he met with Ms. Ulrich maybe five or six times before trial, that they had a good relationship, and

---

[3]  Ms. Ulrich continued, "I would not have encouraged trial.  Not, especially not with the plea offers that were on the table, or plea offer that I recall.  I would not have encouraged trial because we had the drug trafficking count to deal with." (*Id.* at p. 20).

9

that he trusted her.  (*Id.* at pp. 37-38).  Defendant confirmed that he and Ms. Ulrich

discussed whether he should accept a plea offer or proceed to trial.  (*Id.* at p. 38).

According to Defendant, he received binding plea offers of 21, 20, and 19 years,

but never saw a plea agreement in writing.  (*Id.* at pp. 38-39).  He stated that

counsel did not explain what a binding plea entailed, but that he learned what it

involved at some point.  (*Id.* at p. 39).  Defendant explained that he did not accept

any of the pleas because he "wanted something lower."  (*Id.* at p. 41).  Later in his

testimony, Defendant added that he rejected the plea deals not only because he

desired a lower offer, but because he believed the Government's evidence was

fabricated and not truthful.  (*Id.* at pp. 55-56 (Defendant's testimony that "it

wasn't true what the government was bringing up against me" and that the

prosecutor "fabricated a lot of stories and witnesses and he coached them to saying

things that wasn't true").  He stated that Ms. Ulrich did not advise him to reject the

plea offer.  (*Id.* at p. 42).

In terms of sentencing exposure, Defendant at first testified that Attorney

Ulrich did not discuss what his potential sentence would be if he were convicted at

trial, and he did not recall that she provided a guidelines calculation.  (*Id.* at p. 40).

He stated that Ms. Ulrich did explain that the two firearms counts would be

consecutive to the drug count, but she did not explain that it was *mandatory* that

the sentences be imposed consecutively.  (*Id.* at p. 40).  On cross-examination, however, Defendant testified that Ms. Ulrich did calculate his guidelines sentencing range, except he persisted that she did not describe what his potential sentence would be if be proceeded to trial and admitted to the drug charge.  (*Id.* at p. 49).

With respect to trial, Defendant testified that he and counsel had discussed that he would concede the drug charge and that, by doing so, he would receive a very significant sentence.  (*Id.* at pp. 43-44).  Having admitted the drugs, Defendant testified to his belief that he had a 50/50 chance of beating the firearms charges.  (*Id.* at p. 45).  Although he did not know where he got that percentage, he agreed that Ms. Ulrich had given him some hope of winning the gun counts.  (*Id.* at p. 45).  Defendant confirmed that Ms. Ulrich reviewed the discovery with him and went over the anticipated evidence at trial, as well as the risks of going to trial.  (*Id.* at pp. 46, 49).  He stated that Ms. Ulrich never discussed with him the strength of the Government's case.  (*Id.* at p. 50).  When questioned about certain statements he made in his pro se § 2255 motion, he reaffirmed that Attorney Ulrich had said "undoubtedly, will beat those charges" and "don't take [the plea

offer].  I have an obligation to tell you, but don't take it." (*Id.* at pp. 52-54).[4]

In addition, Defendant conceded that another inmate had assisted him in preparing his pro se § 2255 motion.  (*Id.* at p. 42).  Defendant testified that he could remember some information about the inmate, like his cell block and where he was from, but could not remember other information, like his name and cell number.  (*Id.* at pp. 50-51).  Both the Government and the Court questioned Defendant about certain statements he had made in his pro se statement – statements inconsistent with some of his testimony – and Defendant stated that "the truth is what's on that 2255."  (*Id.* at p. 53).

Following the hearing, Defendant submitted a brief in support of his § 2255 motion on April 22, 2015 (Doc. 210), the Government filed opposition papers on May 11, 2015 (Doc. 213), and Defendant filed a reply on May 20, 2015 (Doc. 214).  With the benefit of a full complement of briefings, as well as the evidentiary hearing, we proceed to disposition of this action.

---

[4] For example, Defendant testified as follows:
Q: Did she ever tell you that she guaranteed a particular result at trial?
A: I know we had a better chance if we consented the drugs.
Q: But she didn't use the word "guarantee," did she?
A: She must have if I put it in there, yes.
Q: I'm asking you know, Mr. Diaz.  Not what's in the affidavit.  I'm asking you to tell me now did she ever use the word "guarantee," did she guarantee you would win at trial?
A: Yes.
(Doc. 211, p. 54).

## II.   DISCUSSION

Ineffective assistance of counsel claims are reviewed under the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under the first prong, a movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance.  *Strickland*, 466 U.S. at 688.  A defendant's right to effective assistance of counsel encompasses plea negotiations, *see Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012), and counsel must provide a defendant with information sufficient "to make a reasonably informed decision whether to accept the plea offer."  *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *U.S. v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)) (internal quotation marks omitted).   That counsel made "an erroneous strategic prediction" concerning the outcome of trial is not prima facie proof of deficiency.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1391 (2012).  Moreover, reviewing courts must be "'highly deferential' to counsel's reasonable strategic decisions and guard against the temptation to engage in hindsight."  *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002) (quoting *Strickland*, 466 U.S. at 689-90).

Under the second *Strickland* prong, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of

13

the proceeding would have been different." *Strickland*, 466 U.S. at 694. Where

the defendant rejected a plea offer and proceeded to trial, the prejudice prong

involves a showing that, "but for the ineffective advice of counsel there is a

reasonable probability that the plea offer would have been presented to the court

(*i.e.*, that the defendant would have accepted the plea and the prosecution would

not have withdrawn it in light of intervening circumstances), that the court would

have accepted its terms, and that the conviction or sentence, or both, under the

offer's terms would have been less severe than under the judgment and sentence

that in fact were imposed." *Lafler*, 132 S. Ct. at 1385.

Here, Defendant argues that counsel did not recommend vigorously enough

that Defendant accept the plea offer. He notes Ms. Ulrich's testimony that she

"probably recommended" but did not "push" a plea upon Defendant, and that she

always leaves the ultimate decision to the defendant whether to plead or proceed

to trial. (Doc. 211, pp. 20-21). Defendant asserts that "this case was the exception

where counsel should have persistently made the specific and forceful

recommendation to enter a plea where there was no logical reason to pursue the

trial course." (Doc. 210, p. 11). In this vein, he points out that the concession of

the drug charge would result in a guidelines range of 210 to 240 months, and that

the alleged final plea offer of 19 years (228 months) fell within this range. (*Id.* at

14

p. 12).[5]

Defendant also observes that, while counsel may have reviewed various sentencing guidelines calculations with him on May 16, 2007, as indicated in her notes, this discussion was more than seven months before he ultimately went to trial, and he only had one firearms charge at that time.  Moreover, Defendant testified that he did not understand the *mandatory* consecutive nature of the firearms charges, and Ms. Ulrich testified that her notes do not reflect such a discussion (although she did state that her guideline calculations were "well in excess of the mandatories").  (Doc. 211, pp. 14, 41).  Further, when Ms. Ulrich and Defendant discussed conceding the drugs charge during a meeting in December 2007, Ms. Ulrich did not make any notes that she also explained Defendant's sentencing exposure on the same.  (*Id.* at p. 24).

As to prejudice, the Defendant maintains that had he been properly advised as to the "stark realities" of his case, he would have accepted the plea offer of 19 years (228 months), which was well below the sentence of 397 months that he ultimately received.  (*Id.* at pp. 12-13).

The Government counters that counsel's representation of Defendant, as

---

[5]  In fact, Ms. Ulrich testified that, if Defendant was convicted on the drug count alone, the guidelines range would be 210 to 262 months.  (Doc. 211, pp. 9, 18).  However, the statutory maximum on Count II was 20 years (240 months).  *See* 21 U.S.C. § 841(b)(1)(C).

described by Ms. Ulrich and corroborated by Defendant, more than met the constitutional threshold for effective assistance of counsel.  The Government highlights that there is no authority for Defendant's assertion that counsel should "persistently" make a "forceful recommendation to enter a plea."  Moreover, in answer to Defendant's argument that there was no logical reason to pursue the trial course, the Government observes that trial was Defendant's only means of obtaining his objective of a sentence below 20 years.  (Doc. 213, p. 12).[6]  Lastly, the Government points to the inconsistencies in Defendant's testimony at the evidentiary hearing and, also, between his testimony and his averments in his sworn affidavit appended to his pro se § 2255 motion (Doc. 179, 16-17), urging that Defendant is not credible.

After a thorough review of the evidence and the arguments forwarded by counsel in this matter, we hold that Defendant has not demonstrated trial counsel's ineffectiveness.  The evidence demonstrates that Ms. Ulrich provided Defendant with adequate information "'to make a reasonably informed decision whether to accept a plea offer.'"  *United States v. Bui*, 769 F.3d 831, 835 (3d Cir. 2014)

---

[6]  The Government elaborates that, "[e]ven though by going to trial Diaz was assured of a conviction to drug trafficking and suffer the consequence of not receiving acceptance of responsibility, he could still argue for a sentence below 20 years because that offense did not carry a mandatory minimum period of imprisonment and the sentencing guidelines are advisory." (Doc. 213, p. 12).

(quoting *Shotts*, 724 F.3d at 376).  Ms. Ulrich credibly testified that she kept

Defendant informed of plea discussions with the Government, specifically

discussing the 20 year plea offer with Defendant on November 19, 2007 (after the

Superseding Indictment was filed); advised Defendant to accept the plea offer and

explained why; explained the pros and cons of proceeding to trial; discussed with

Defendant the evidence against him; discussed sentencing exposure and provided

sentencing guidelines calculations for multiple sentencing scenarios; and

discussed trial strategy with Defendant and the consequences of conceding his

drug charge.  (Doc. 211, pp. 8, 9, 12, 14, 16-18, 20-21).  Significantly, Defendant

confirmed that Ms. Ulrich updated him concerning plea negotiations with the

Government (although he remembers three different offers, while Ms. Ulrich

remembers one);[7] reviewed the discovery and evidence with him; discussed the

pros and cons of going to trial "to some extent"; discussed the risks of trial;

advised of the consecutive nature of the firearms charges; and never counseled

him to reject the plea offer.  (*Id.* at pp. 38, 39, 40, 41, 42).  Although Defendant

first testified that he did not recall that Ms. Ulrich calculated his guidelines

---

[7] Although it does not affect our substantive analysis, we note that the Government, in a previous submission, did not challenge Defendant's recollection that three, binding plea offers were made.  (Doc. 183, p. 7 ("It is not contested that the plea offers were binding sentences of 21, 20, and 19 years, all of which were less than the sentence Diaz is currently serving.")).

sentencing range (*id.* at p. 40), he later confirmed that she did provide the calculations.  (*Id.* at p. 49).  Based on this evidence, we conclude that Ms. Ulrich's performance easily met the constitutional threshold for effective assistance of counsel.

There is no jurisprudential basis for Defendant's position that counsel rendered ineffective assistance because she did not encourage a plea more persistently and forcefully.  As stated, an objective reasonableness standard applies to counsel's performance, and the bar Defendant proposes is far more exacting, not to mention subjective.  *See Strickland*, 466 U.S. at 688; *see also Shotts*, 724 F.3d at 376 ("In the context of a guilty plea, counsel is required to give a defendant information sufficient 'to make a reasonably informed decision whether to accept a plea offer.'" (quoting *Day*, 969 F.2d at 43)).

To the extent Defendant had argued that counsel was deficient for advising him of "guaranteed" success on the firearms charges, such position is undermined by the credible testimony of Ms. Ulrich to the contrary, and Defendant's own evasive testimony.  (Doc. 211, p. 54).[8]  Even if Ms. Ulrich had made "an erroneous strategic prediction" regarding an outcome at trial, this does not necessarily

---

[8]  For example, when asked whether Ms. Ulrich ever told Defendant that "she guaranteed a particular result at trial," Defendant's answer was not confirmatory but hedged: "I know we had a better chance if we consented to the drugs."  (Doc. 211, p. 54).

18

indicate ineffective performance, *Lafler*, 132 S. Ct. at 1391, and the Court must view counsel's reasonable strategic decisions with great deference. *See Marshall*, 307 F.3d at 85. Ms. Ulrich testified that the defense to the firearms counts was that Defendant was not present during the charged incidents, and she recalled that eye-witnesses made inconsistent statements about what they saw. (Doc. 211, p. 19). She acknowledged that she generally believed the Government's case against Defendant to be strong, but that "[a]t trial [she] thought [she] saw weaknesses." (*Id.*).

Importantly, we cannot ignore the inconsistencies in Defendant's testimony and submissions to the Court, drastically diminishing his credibility. For example, Defendant first testified that Ms. Ulrich never advised him to reject the plea offer. (Doc. 211, p. 42).[9] However, less than 20 minutes later he confirmed the veracity of the statement he had made in his previously-submitted sworn affidavit, namely, that Ms. Ulrich had advised him "don't take it. I have an obligation to tell you, but don't take it." (*Id.* at p. 52; Doc. 179, p. 16). When confronted with the contradiction, Defendant evaded by saying "the truth is what's on that 2255

---

[9] Specifically, Defendant testified:
Q: . . . Did she ever give you advice to reject the plea offer?
A: No.
(Doc. 211, p. 42).

19

[affidavit]." (Doc. 211, p. 53). Similarly, when the Court asked Defendant

whether it was true that Ms. Ulrich had "guaranteed" that she would beat the gun

charges, Defendant answered that she "must have if I put it in [the affidavit]." (*Id.*

at p. 54). Because of these instances and other inconsistencies, we do not find

Defendant to be a credible witness, especially with respect to his position that

counsel did not advise him of his true sentencing exposure and advised him to

reject a plea offer – the lynchpins of his motion.[10]

Finally, the inescapable conclusion that can be easily drawn from

Defendant's disastrous testimony in this matter is that he was wholly unfamiliar

with the contents of his own filings. We surmise that this is because the factual

allegations therein were not his own, but were contrivances crafted to conform to

Sixth Amendment case law. Shot through Defendant's testimony is that he was

literally making it up as he went along. In the end, Defendant had the services of

an exceedingly competent counsel who at all times acted professionally and in his

best interests. His conviction and sentence are the product of his own poor

---

[10] Even if we did credit various of Defendant's statements regarding Ms. Ulrich's alleged deficiencies or omissions in advising on sentencing exposure, we note that, to comply with the Sixth Amendment, counsel need not "give each defendant anything approaching a detailed exegesis of the myriad arguably relevant nuances of the Guidelines," *Day*, 969 F.2d at 43, nor must she provide "an exact number or close estimate of the maximum sentencing exposure," *Shotts*, 724 F.3d at 376, so long as she imparts sufficient information for a defendant to make a reasonably informed decision regarding a plea offer, *see id.*

judgment, not counsel's.

Having found that counsel's performance was far from deficient, we need not proceed to evaluate prejudice.

## III.   CONCLUSION

For the reasons articulated herein, we will deny Defendant's Amended § 2255 Motion.  An appropriate Order shall issue.